HANN v. SUPREME RULING OF FRATERNAL MYSTIC CIRCLE.

(Supreme Court, Appellate Division, Fourth Department.  March 5, 1913.)

1. INSURANCE (§ 723*)—MUTUAL BENEFIT INSURANCE—CONSTRUCTION BY PARTIES—TEMPERANCE—"TEMPERATE."

Where insured expressly warranted in his application for membership that he did not use spirituous liquors to excess, or use alcoholic or other stimulants, and that he was temperate in his habits, and, in answer to questions as to his habit in the use of alcoholic liquors during his life said "have taken beer," and that he had been intoxicated twice within the last three years, the last time six months ago, and was accepted as a member on that showing, it was an understanding or construction of the meaning of the terms "temperate" and "using liquor to excess," to the effect that occasional intoxication and drinking beer did not exclude a person so indulging from the category of temperate men who did not use intoxicants to excess, so that a denial of excessive use in an application for reinstatement was not untrue as between the parties, though insured continued to drink as before.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*

For other definitions, see Words and Phrases, vol. 8, p. 6900.]

2. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS—INSURANCE—KNOWLEDGE OF MEDICAL EXAMINER.

In an action on a certificate of insurance, error, if any, in an instruction that whatever the local medical examiner knew as to insured's habits at the time of the examination was imputable to the defendant, was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

3. INSURANCE (§ 718*)—ACTION ON CERTIFICATE—CONDITIONS PRECEDENT—PARTIES BOUND.

A beneficiary, not a member of the insuring order, is not bound by its rules or regulations as to procedure in the enforcement of his claim.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1854; Dec. Dig. § 718.*]

Kruse, J., dissenting.

Appeal from Trial Term, Ontario County.

Action by Clara M. Hann against the Supreme Ruling of the Fraternal Mystic Circle.  From a judgment of the Supreme Court in favor of the plaintiff, defendant appeals.  Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Wallace Thayer, of Buffalo (Thayer & Tuttle, of Buffalo, of counsel), for appellant.

Willis C. Ellis, of Shortsville, for respondent.

ROBSON, J.  Plaintiff is the beneficiary named in a certificate of insurance issued by defendant, a fraternal, mutual benefit association, incorporated under the laws of the state of Pennsylvania, issued to Fred H. Lindsay, who was a member of defendant.  The original certificate bears date May 16, 1905, and Lindsay died November 14, 1911.  Plaintiff was not the original beneficiary named in the certifi-

cate, but was, after the death of the first beneficiary, duly substituted as such beneficiary. The amount payable by defendant to the beneficiary on the death of the insured was $500. As stated in the brief for appellant:

"The sole points litigated at the trial were whether the provisions of the contract were violated by reason of the continuous intoxication of the deceased Fred H. Lindsay, and whether the plaintiff had exhausted her remedy within the order by appeal before she brought this action."

[1] By the terms of the certificate Lindsay's application or petition for membership became a part of the certificate or contract of insurance. By express agreement in this petition Lindsay warranted the truthfulness of the statements therein, and agreed that any untrue or fraudulent statement made therein or to the medical examiner or any concealment of facts by him in his petition should forfeit all rights and benefits in the order. His statement to the medical examiner consisted of written answers to questions which he signed. The certificate of membership, thereupon issued, in terms made the petition and statement to the medical examiner a part of the contract, and further provided that the certificate was issued upon condition that such statements and representations so made by him were true, and the constitution, laws, rules, etc., of the order were made a part of the contract. So far, therefore, as the truthfulness of the statements of the applicant in the petition and in the statement to the medical examiner is concerned, it was warranted by him, and made a condition precedent to the validity of the certificate itself. About two years and ten months after the issue of the certificate, it appears to have been forfeited because of Lindsay's failure to keep up and pay the assessments chargeable to him and necessary to continue his membership in the order; and on March 5, 1908, he made a written application to have it revived and reinstated. This application also contained certain warranties, among which was that he did not then use spirituous liquors to excess; and he further expressly agreed that his original application for membership, under which the certificate had been issued, should be effective and binding the same as if made to the defendant at the date of the application for reinstatement.

Appellant claims that the statement in the application for reinstatement that the applicant did not use spirituous liquors to excess was untrue; that his answer, "No," in his statement to the medical examiner when he made his application for membership to the question, "Do you use alcoholic or other stimulants?" was untrue, and the statement in his application for admission to the order that he was temperate in his habits was also untrue. But these statements must be taken and considered with other statements of the applicant in response to questions on the same subject in this same statement to the medical examiner. Immediately following the answer to the question whether the applicant used alcoholic or other stimulants appears the following:

"If so, state definitely how long, what kind, and the specific amount used daily per week, etc. [Not answered.] What has been your habit in this respect through life? Have taken beer. (25) Have you been intoxicated within

the last three years? Yes. If so how often? 2 times. When last? 6 mos. ago."

It will be observed that Lindsay's statements as to his being temperate, quoted above, conceding them to be warranties, were, to some extent at least, matters of judgment or opinion; and should be regarded as a general characterization of his habits in regard to the use of intoxicating liquor as he viewed them. He stated that he was temperate, and did not use liquor to excess; but at the same time he fully advised defendant that he had been intoxicated twice in the preceding three years, and that the last time was only six months prior to the date of his application. He had a right, therefore, to assume that defendant understood as he did that he was temperate, and was not using liquors to excess, even though he occasionally became intoxicated and drank beer. Defendant must itself have so understood it. There is no proof in the case that his statement, which I concede was in effect that he had been intoxicated only twice in the three years preceding his application, was untrue. The specific proof of his intoxication during the period of about 10 years immediately preceding his death averaged about once a year, conceding that each record of his conviction introduced in evidence was for intoxication, which fact does not in each instance appear. But Lindsay's view of the meaning of his assertion that he was temperate, and did not use liquor to excess, must be taken in connection with the statement that he had been intoxicated twice during the preceding three years, and the last time only six months before the application was made. It was a practical construction of the meaning of the terms, used in the questions, the form of which defendant itself adopted, "temperate" and "using liquor to excess," to the effect that occasional intoxication and drinking beer did not exclude a person so indulging from the category of temperate men who did not use intoxicants to excess. The evidence is clear that Lindsay continued to become intoxicated at about the same intervals as previously during the remainder of his life; but the inference that the rate or proportion theretofore established by implied agreement as not passing the bounds of temperance and reaching the point of using liquor to excess had been exceeded by him after taking out the certificate is not warranted by the evidence. It appears that he was not a habitual drinker, and that he was easily affected to the point of apparent intoxication by a usually negligible amount of liquor; that its effect appeared in a sudden and peremptory display of power, from the effects of which he as rapidly recovered. The evidence does not establish that his health was impaired or affected by its use; and that point is not seriously urged by appellant. I think the jury was well warranted in finding that the statements to which I have called attention were true within the reasonable meaning of the terms used as both parties necessarily understood them.

[2] At the request of plaintiff the court charged that whatever Dr. Eiseline (the local medical examiner) knew as to the habits of Lindsay at the time he made the examination of Lindsay prior to his admission as a beneficial member of defendant was imputable to the head organization. This charge was not excepted to; and in any event was, if

error, not of sufficient moment to warrant a reversal even if exception had been duly taken.

[3] Lastly, the claim that plaintiff should have first sought the allowance of her claim by the designated tribunals within the order is without merit. She was not a member of the order, and therefore not bound by its rules or regulations as to procedure. Strasser v. Staats, as Noble Grand, etc., 59 Hun, 143, 13 N. Y. Supp. 167. Besides, the prohibition that "no suit in law or equity shall be commenced or maintained by any member or beneficiary against the order until every remedy provided by its laws has been exhausted" was apparently not in force as a part of the constitution and laws of the order when the certificate was issued to Lindsay, nor when it was renewed. It is also doubtful, to say the least, whether such an agreement limiting the decision of all questions arising under an executory contract to the decision of a board or individual and excluding the right to appeal to the courts is enforceable. Sanford v. Commercial Trav. Ass'n, 147 N. Y. 326, 41 N. E. 694.

The judgment and order should be affirmed, with costs. All concur, except KRUSE, J., who dissents in a memorandum.

KRUSE, J.  I dissent upon the grounds:

(1) The insured was not temperate, as he represented and warranted himself to be, and he misstated and concealed facts respecting his excessive use of intoxicating liquors.

(2) His beneficiary is not entitled to insurance under the laws of the defendant association and the conditions upon which his certificate was issued, because of his excessive use of intoxicating liquors, both before and after he became a member of the defendant association. He first became a member of the order May 18, 1905. Within three or four years before that he had been convicted several times of public intoxication. He failed to pay his assessments, but was reinstated March 5, 1908. At that time there had been several other convictions against him for public intoxication. After his reinstatement he was again convicted of public intoxication. During the last year of his life he was convicted of public intoxication four or five times—once in November, 1910; again, February, 1911, when he was sentenced to imprisonment in the county jail for 90 days; again, July 29th, when he was sentenced to imprisonment; again, September 22d; and, finally, October 9th, when he was sentenced to imprisonment for a term of six months, dying in the county jail while he was serving that term. I think he was intoxicated too much and too often to be classed as temperate. Besides, the evidence shows that in his first application he misstated the number of times he had been intoxicated. He admitted that he was intoxicated six months before the date of his application, and the evidence shows that he was convicted of public intoxication at least twice before that within the three-year period covered by the inquiry contained in the application.

(3) The evidence does not support the finding of the jury that the medical examiner knew all about his intoxication, nor is the defendant chargeable with such knowledge.